## Apsley's Estate.

*Escheats—Right of Commonwealth to proceed under Acts of May 16, 1919, and April 21, 1921, in disregard of the Escheat Law of May 2, 1889, where alleged escheator had informed the Attorney-General of existence of the fund.*

1. The Act of May 16, 1919, P. L. 169, providing for the payment into the State Treasury of unclaimed funds in the hands of fiduciaries, as amended by section 5 of the Act of April 21, 1921, P. L. 219, whereby the court auditing the account of a fiduciary may, upon motion or of its own initiative, in its discretion order payment of such funds into the State Treasury, supersedes section 24 of the Escheat Law of May 2, 1889, P. L. 66, as amended by section 4 of the Act of May 11, 1911, P. L. 281, in regard to unclaimed funds in the hands of fiduciaries.

2. The Commonwealth may elect to proceed under the Act of 1919 and its amendment of 1921, notwithstanding the fact that the alleged escheator notified the Attorney-General in the first instance of the existence of the fund.

Exceptions to adjudication.   O. C. Phila. Co., July T., 1926, No. 2466.

The facts appear from the following extract from the adjudication of VAN DUSEN, J., Auditing Judge:

"Jennie G. Whisman claimed one-fourth of the balance for distribution under the acts authorizing such payment to the informer in escheat proceedings. After the death of the decedent, Mrs. Whisman, as creditor, procured the granting of letters of administration on the estate and informed the Commonwealth that decedent had died without known heirs or next of kin. However, the Commonwealth is not claiming an escheat, either by the attorney who appeared in its behalf or by the appointment of an escheator to claim an escheat. The Commonwealth asks that the balance for distribution be awarded to be paid into the State Treasury, without escheat, under the Act of May 16, 1919, and its supplements. The latter act requires administrators and others having possession of estates of decedents which the court is unable to award in distribution for lack of knowledge of heirs or next of kin, to send a statement thereof to the Auditor General, 'and thereupon proceedings to secure the payment of such moneys into the State Treasury, to be refunded as hereinbefore provided, shall be had.' But the act nowhere makes provision for the payment of any part of the fund to any person who shall volunteer the information which it is the duty of the administrator to supply as administrator. In this case, the party who procured the appointment of the administrator, instead of leaving it to the administrator to perform this duty, herself gives information to the Auditor General. The claim is dismissed."

*Crawford A. Battle*, for exceptant.

*Edward F. Hitchcock*, Special Deputy Attorney-General, contra.

LAMORELLE, P. J., Nov. 22, 1926.—The exceptions are by Jennie G. Whisman as informant and are filed because the Auditing Judge declined to find an escheat and to allow her one-fourth of the fund as compensation. It, therefore, becomes necessary to examine certain legislation relating to escheats and to unclaimed funds.

The Act of May 2, 1889, P. L. 66, provides (by section 1) that if any person possessed of personal property at the time of his death dies intestate without known kindred, such estate shall escheat to the Commonwealth, subject to all legal demands thereon; by section 4, the Auditor General is to appoint some suitable person as escheator, and (by section 6) if no letters of administration have been granted, it is made the duty of such escheator to apply to the register of the proper county for a grant thereof. Any person

who shall first inform the Auditor General of the escheat, and who shall procure the evidence necessary to substantiate this fact and prosecute the right of the Commonwealth to the property with effect, is entitled to one-third of the net estate. (Section 24, amended by section 4 of the Act of May 11, 1911, P. L. 281, reducing the amount to one-fourth of the net, and providing that "the amount so due be paid out of the State Treasury by warrant of the Attorney-General.") The court having jurisdiction in each case of escheat (by section 10) is directed to find whether an escheat hath occurred or not; if so, in what manner, etc.; and if there should be one, to award the property "to the escheator for and on behalf of the Commonwealth."

Thus much for the escheat acts, so far as they may have bearing upon the questions raised by exceptant.

The Act of May 16, 1919, P. L. 169, which is an act providing for the payment into the State Treasury of unclaimed funds in the hands of a fiduciary—and an administrator comes within the meaning of "fiduciary" (by section 1)—provides that whenever there shall be and remain in the hands of a fiduciary any funds *not awarded* to any claimant whose whereabouts cannot be ascertained, the fiduciary shall, within sixty days, file a statement of such fact, and proceedings shall then be instituted to secure the payment of the money into the State Treasury. This section is amended by section 5 of the Act of April 21, 1921, P. L. 219, whereby the court, auditing an account of a fiduciary, may, upon motion or of its own initiative, in its discretion, order payment into the State Treasury.

In an opinion of the Attorney-General's office (Feb. 2, 1920), reported in 29 Dist. R. 749, it was held that section 24 of the Act of 1889, as amended by section 4 of the Act of 1911, is supplanted by section 5 of the Act of 1919 *(supra)*, so far as it applies to unclaimed moneys in possession of fiduciaries. The later act furnished a method by which the Commonwealth could secure the necessary evidence without depending upon an informant.

Thus stood the law, and a departmental construction thereof, when Ida M. Apsley died, Nov. 12, 1925. Her estate, consisting entirely of personal property, B. & L. shares, money on deposit, "death benefits" and furniture, amounted to $3124.97. After the payment of debts, costs of administration, etc., there was left approximately $900.

Jennie G. Whisman, a friend of long standing, with whom the decedent roomed and boarded, and also a creditor in the sum of upward of $600, waived her right to administer in favor of one Meyer Krause, and, at her request, letters of administration were granted him Nov. 18, 1925. That same day, Jennie G. Whisman, through counsel, lodged information in the formal manner required by the Act of 1889 *(supra)* with the Attorney-General. This official acknowledged receipt thereof Nov. 27, 1925; he noted that an administrator had been appointed and informed Mr. Erdman, who had written in Jennie G. Whisman's behalf, that the Commonwealth would proceed under the Act of 1919 *(supra)*, which act, he stated, was intended to supersede the escheat laws where there was a fiduciary functioning.

It is admitted of record that Jennie G. Whisman co-operated with the administrator in procuring the testimony necessary to prove the negative—so far as a negative can be proved.

At the audit, the Commonwealth appeared by its Deputy Attorney-General and made claim under the Act of 1921 *(supra);* and the Auditing Judge, finding in effect that there were no known kindred or next of kin, made an award accordingly.

We are of opinion that his ruling was proper in the premises.

The informant had notice at the very outset that the Commonwealth declined to appoint an escheator as unnecessary, and that its claim would be made under the Act of 1919. There was, therefore, nothing further for her to do, and she incurred no legal liability, nor was she compelled to establish an escheat. What she did was self-imposed. In the circumstances, the Auditing Judge was without power or authority of his own initiative to declare an escheat, because the Commonwealth had proceeded under another and a different law. Possibly, it was optional for the Commonwealth to adopt either course, but in the beginning the informant had notice of its intended action. In neither event, however, is it customary for this court to determine the question of information or to allow compensation to an informer. The fund is awarded to the escheator or to the State Treasury, dependent on the claim as made, and the informant looks to the Commonwealth for its share, not as a fee, as is contended, but as a proportionate part of the sum so awarded if an escheat is required to be found.

All exceptions are dismissed and the adjudication is confirmed absolutely.